### CHARLES ELLIS WORTHINGTON V. MARY HOTTOIS ET AL., EXRS.

1. EVIDENCE—DIVISION OF PROPERTY.

Under a will bequeathing an estate to testators son and daughter, with the further provision that devisees prefer to continue to live as one family and to hold the estate in common they may do so, a division, by agreement, under the first provision, is not affected by devisees continuing to live together as a family upon the estate.

2. REMAINDER BASED UPON CONTINGENCY.

A will devising land to two persons, to be divided by the executor according to the provisions of the will, or to be held in common, as devisees may prefer, with the further provision that if no division is made under the first provision prior to the death of one of devisees, the property shall pass to third persons, creates no vested remainder in such third persons prior to the death of the devisee named.

3. FACTS CREATING ABSOLUTE TITLE IN DEVISEE.

Where, in pursuance of authority conferred by the will, land is sold by an executor, who is one of the devisees, and the legal title to land purchased with the p̲r̲o̲c̲e̲e̲d̲s̲ of such sale is taken in the name of such executor, a subsequent division of the property, by agreement between devisees, whereby the land in question is apportioned to such executor and devisee, it is sufficient without other or formal conveyance to vest an absolute title in such executor and devisee.

4. TRUSTS—FAILURE TO NAME TRUSTEE.

Under a will creating a trust for the benefit of one of the devisees, without naming a trustee, it becomes the right and duty of the executor under the will to act in that capacity.

APPEAL from the Court of Common Pleas of Cuyahoga county.

MARVIN, J.

The plaintiff brings his action to recover certain moneys which are held by the defendant Adams as executor of the last will and testament of Elizabeth Delamater deceased, and to have certain real estate, which stands in the name of the defendant Hottois, decreed to belong to him.

The facts in the case are briefly as follows: Sometime prior to April 2, 1867, Dr. John Delamater, a resident of Cuyahoga county, Ohio, died testate, and on the date last-named his will was duly admitted to probate in the probate court of said county. This will consisted of two parts: an original will executed on January 10, 1866, and a codicil thereto. executed on July 27, 1866.

The property in controversy in this action, both real and personal, is claimed by the plaintiff directly under this will, and by the defendant Hottois, indirectly, under the same will.

At the time of the execution of this original will the testator had three children living, to-wit: Elizabeth Delamater, John A. Delamater and Gertrude C. Worthington.

Before the execution of the codicil his daughter Gertrude died, leaving two children, to-wit: the plaintiff in this action, and his brother Frederick Fisher Worthington.

The said Frederick Fisher Worthington and the said Elizabeth Delamater and John A. Delamater are all now dead; the death of the said John A. having preceded, by several years, that of the said Elizabeth.

Elizabeth Delamater died testate, but both she and John A. Delamater survived the testator; and the defendant, Seymour F. Adams, is the executor of her last will and testament.

Several persons are nominated by the testator as executors of his will; one of whom is his daughter Elizabeth, and she alone qualified as such executor.

After making provision for the disposition of his property under various contingencies named in the will, the testator provides in the seventh item as follows:

"Item 7. But should the said Elizabeth and John A. both survive me (which is highly probable) and either or both of them desire an early settlement of the estate, it is my wish and request that my executrix and executors, or such one or more of them, or their successors as shall accept and act, take measures accordingly, and as preparatory to that end I give to said Elizabeth the family horse and buggy, harness, if such shall remain, and also such articles of the household goods and furniture as she may select for her own proper personal use, present or prospective. And, furthermore, I give to said John A. a good and comfortable bed with bedding and bedstead, a small table, six plain chairs, a stove adapted to warm a small room, and a case of drawers and book-shelves which he is accustomed to occupy for his personal use. The rest and remainder of all my property, real and personal, to be sold for the benefit of the estate, and, after paying all just charges against the same, I give and devise three-fourths of the entire net remainder, to said Elizabeth, and direct that the remaining one-fourth part of the same be vested in securities for the benefit of said John A., in the same manner and forms and upon the same conditions, differing only in the amounts involved, as more particularly described in item 5 of this instrument."

Item 5 referred to in the foregoing item 7, provides in a certain contingency that a fractional part of the estate be invested "by loaning or otherwise, in interest or profit bearing securities, such interest or profits to be paid to said John A., semi-annually or annually during the continuance of his natural life."

The eighth item of the testator's will reads:

"Item 8. 1st. But should said Elizabeth and said John A., both having survived me, be disposed to enter into some arrangement for continuing to live together as a little family in the joint and undivided occupancy of whatever property I may have left for their benefit and, with that intent and purpose request that measures for the final settlement and disposition of the estate be delayed to afford them an oppor-

Worthington v. Hottois.

tunity for making an experimental trial sufficient for testing the working of such plan, it is my request that their wishes in that respect be complied with and that means be appropriated accordingly for their joint support for the term of one year at most, and should they at the expiration of that period of time or sooner than that, jointly request that arrangements be accepted for their permanent continuance in such a way and manner of life, it is my will and desire that my executrix and executors, or such one or more of them as shall at the time have charge of the matter, proceed to dispose and arrange the estate in such manner and form as to them shall appear best adapted to further at once the interests of the estate and the comfort, and convenience of said Elizabeth and John A., in the joint use and occupancy of the same as above named; and, in taking measures to such ends, I hereby submit the arrangement of the affairs in question entirely to the judgment and discretion of said executrix and executors or their successors.  If it seem to them expedient to sell any portions of the real estate or personalty, or to sell the entire homestead with a view to purchase one of less value and rent a home instead; and so also in regard to all other particulars that said executrix and executors may deem of importance, I hereby permit that it be done accordingly.

"'2nd.  And should the demise of said John A., precede that of said Elizabeth, after they shall have given notice to my executrix and executors or whoever shall be acting in that capacity at the time, of their agreement to go together as above named and being at the same time actually living together accordingly, it is my desire and direction that no division or distribution of the estate be made during the survival of said Elizabeth without her consent and approbation but, on the contrary, that she have the use of the entire estate, principal and interests and profits, as far as may be needed for her ample support and comfort during the remainder of her natural life; and, furthermore, I do hereby authorize and empower her in the circumstances last-named, to convey by will one-half of the net amount of the unexpended estate, bating her funeral charges, that shall remain at her decease; the remaining half of her estate I hereby bequeathe to my daughter Gertrude C. Worthington.

"4th.  But should the said Elizabeth and John A., after having settled down upon the plan of joint occupancy of the undivided estate as above-named, become at any after time dissatisfied with that arrangement and jointly request my executrix and executor or whoever may be acting in that capacity, to take definite measures for the settlement and distribution of the estate, it is my desire and direction that measures be taken accordingly in manner and form, and disposal of proceeds as described in item 7 of this will."

Item 9.  In all cases whereby the provisions of this will funds are directed to be invested and held for the benefit of my son John A., and the interests and profits accruing therefrom paid to him annually or semi-annually, I hereby give him such interests and profits positively to be for his own proper use and disposal; and, "in case such profits and interests should prove inadequate for his comfortable and plain support, he at the same time making reasonable efforts towards his support, it is my request and direction that as much of the principal of said funds be also appropriated for his relief as the circumstances shall require."

The first clause of item 10 of said will reads:

"If my daughter Elizabeth should neglect to avail herself of the

privilege of conveying by will as expressly granted in section 2 and section 3 of item 8 of this instrument, I hereby bequeath the legacy thus put at her disposal, as the case may be, to her sister Gertrude C. Worthington.''

The second clause of this item reads:

''In all cases where by the conditions of this will, funds are directed to be set apart and the interests and profits accruing therefrom paid to my son John A. Delamater, etc. etc., it is my will that whatever of the principal of said funds shall remain unexpended at his decease, bating his funeral charges, be paid to his sister Gertrude C. Worthington.''

The third clause of said item reads:

''In all cases where by the terms of this will bequests are made to my daughter Gertrude C. Worthington, it is my wish and direction if she shall have deceased previous to such legacy or legacies being paid, that the same be paid to her two children Charles Ellis Worthington and Frederick Fisher Worthington if both shall survive; the legacy or legacies to be divided equally share and share alike; if only one of them survive, the whole to be paid to one but, if both of them shall have deceased, the same to be paid to the husband and father, Ellis Worthington.''

There is nothing in the codicil to this will, which affects the determination of the matter in controversy here.

At the time of the death of the testator he owned quite an amount of personal property, and real estate consisting of a homestead of considerable value in the city of Cleveland. This homestead was sold by Elizabeth during the lifetime of John A., and conveyed by her as executrix of the will of her deceased father; and with a part of the avails of such sale she purchased the real estate the ownership of which is in controversy in this action, and took the title to herself personally.

From the time of the death of the testator until the death of John A., a period of some —--—years, Elizabeth and John A., resided together; at first, in the homestead which the testator owned at the time of his death, and after it was sold as hereinbefore stated, they resided upon the premises the title to which is in controversy here.

In December 13, 1870, Elizabeth as executrix of her fathers will, filed an inventory of the estate in the probate court of Cuyahoga county. Later she and her brother John A., signed a writing purporting to be a division of the property and assets of the estate of Dr. John Delamater, deceased, under his will. By this writing, certain property purports to be set off and assigned to John A., amounting in value to one-fourth of the entire estate; and certain other property including the real estate, the title to which is in controversy here, purports to 'be set off to said Elizabeth. This writing states that the division is to be as of April 1, 1871. The writing itself is not dated.

Subsequent to this division, Elizabeth filed with the probate court what is designated as a final account of her doings as executrix; and this shows a separation or division of three-fourths of the property to her, and one-fourth to John A. And it further shows that Elizabeth took a credit to herself for the expenses incurred by herself and John A., while living together under the provisions of the will.

This account was filed while John A. was still living. Subsequently, and after the death of John A., Elizabeth filed in the probate court an account designated "supplemental final account of the estate of John Delamater deceased.''

Worthington v. Hottois.

In this account she charges herself with the property which by the writing purporting to be a division of the property, is said to be set off to John A., and credits herself with expenditures claimed to have been made by her for him and expenses incurred on his account more than sufficient to balance the amount of his portion of his father's estate as shown by the writing of division between them.

In this account no credit is taken for anything expended for the joint support of Elizabeth and John A.

The first account referred to, being the one in which credit was taken for such expenditures, was sworn to on March 29, 1871. As has been already said, the writing purporting to evidence a division of the property between Elizabeth and John A., states that it is to take effect April 1, 1871; that is, immediately after the preparation of this account which was filed in the probate court as a final account.

The fact that John A., and Elizabeth continued to live in the same house, and, to all outward appearance, in the same manner after this claimed division of the property as they did before, is urged on the part of the plaintiff here as evidence that, during the entire time from the death of the testator until the death of John A., these parties were carrying out the provision of the will made for them when they should live together as a little family.

But, finding as we do, that this division was made as of April 1, 1871, we do not think that the continuance of John A., and Elizabeth to live together, in any wise interferes with that division. It was clearly shown on the trial that John A., at the time of and after said division was in very poor health and became a great charge, and that the only natural place, apparently, for him to be taken care of was in the family where he had resided and under the supervision of his sister Elizabeth, under whose care he had been for years before. This seems to afford sufficient reason for their living together afterwards, in the manner in which they did. The circumstances of John A.'s health were such as made it necessary for somebody to have constant care over him, and no one could better attend to his wants than his sister Elizabeth. They had a right to make the division, and they had a right after the division was made, to live together or not, as they should think best; and their continuing to live together did not affect the rights of this plaintiff in any manner whatever. The rights of Elizabeth and John A., in the property were fixed by the division made in pursuance of the provisions of the will.

It will be observed that in the clause of the will of the testator providing in a certain contingency that the estate may be divided between John A., and Elizabeth, the portion to be set off to John A., is to be invested so that that income and such part of the principal as is necessary for his support may be expended for him. No trustee is provided for to take charge of this portion so to be set off to John A., and, in the absence of any such trustee, it seems clear that it would be the duty of the executor of the will to act as such trustee; and it is upon this hypothesis that this supplemental final account was filed with the probate court.

This account, as well as the one previously filed by this executor, was approved and confirmed by the probate court and as has already been said, this supplemental account shows that no part of that which was set off to John A., remained at the time of his death.

Some time before the death of Elizabeth she conveyed by warranty

deed to the defendant Hottois—reserving to herself a life estate—the real estate the title to which is in controversy here; and by her last will and testament she bequeathed to said Hottois the funds which are in the hands of Adams and the ownership of which is in controversy here.

On the part of the plaintiff, it is urged that Elizabeth was never such owner of either this real estate or personal property as that she could so convey the former by deed as to make a title in the grantee, and that she could not by will so dispose of the personal property as to make the legatee the owner thereof.

While on the part of the defendant, it is claimed that by the division evidenced by the writing already mentioned, Elizabeth became the absolute owner of both this real and personal property.

If the plaintiff had, by virtue of the will of Dr. John Delamater, a vested remainder in this property, it is said that no proper steps were ever taken to divest him of such remainder. But did he have any vested remainder in any of this property? His estate was to take effect and be enjoyed by him upon the happening of a certain contingency, to-wit, the death of Elizabeth without any division having been made between herself and her brother.

It is urged that prior to this alleged division, although the legal title to the real estate in controversy was in Elizabeth, she really held it as a trustee under the will of her father and that in such trust she and John A., and this plaintiff all had an interest and that nothing was ever done which could divest John A., or the plaintiff of their respective interests, and that, therefore, at the time of the death of John A., the plaintiff's interest remained in said property.

But it must not be overlooked that the plaintiff was only to have an interest in any of this property in the event that no division of it took place between Elizabeth and John A. before the death of John A.

We find that such division did take place as is provided for in the will, and that, since the legal title to this real estate was already in Elizabeth, it was not necessary that there be a conveyance to her by John A., but that this property having been by the terms of the division apportioned to her, the title which she already had, became absolute in her.

This results in our finding that the plaintiff has no interest whatever either in the real estate described in the petition, or in the funds in the hands of Adams as executor of the will of Elizabeth. And the petition is, therefore, dismissed at the costs of the plaintiff.

*Dickey, Brewer & McGowan* and *White, Johnson, McCaslin & Cannon*, for plaintiff.

*Chas. E. Pennewell,* for defendants.